UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KODY HERBST,

        Plaintiff,

    v.                                                                CAUSE NO. 3:26cv145 DRL-SJF

PROGRESS RAIL SERVICES
CORPORATION and PROGRESS RAIL
MANUFACTURING CORPORATION,

        Defendants.

<u>OPINION AND ORDER</u>

On December 31, 2025, Kody Herbst sued his former employer (Progress Rail Services Corporation) and another entity (Progress Rail Manufacturing Corporation) in Miami Superior Court. The court treats these defendants together in this opinion as Progress Rail, as both joined in the February 2026 removal of the case here, though Mr. Herbst seems to have no relationship with Progress Rail Manufacturing Corporation.

Mr. Herbst says, after he submitted notice of his resignation, Progress Rail misrepresented the date on which his employer-sponsored health coverage would end. In reliance on that representation, he incurred medical expenses that were not covered because his health plan terminated earlier. He alleges claims for breach of contract, negligent misrepresentation, promissory estoppel, and equitable estoppel.

Progress Rail based removal on federal question jurisdiction and preemption by the Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. § 1001 *et seq.* On March 2, 2026, Mr. Herbst moved to remand, arguing that removal was untimely and that the court lacked jurisdiction. Mr. Herbst also filed two requests for oral argument. One would have

sufficed to alert the court to the request, and neither provides a compelling reason for oral argument, though the court generally remains receptive to it. Here, the briefing aptly presents the issues without need of it.

First, Mr. Herbst argues removal was untimely because, in his view, Progress Rail was served on December 31, 2025 when he mailed the summons and complaint. He points to Indiana Trial Rule 5 to argue that service was complete on their mailing date. Thus, says Mr. Herbst, Progress Rail's removal 35 days later was untimely.

Though removal is governed by federal law, because this is a case removed from state to federal court, the court looks to state procedures to determine when the defendants were properly served; that supplies the predicate information needed to answer the removal question under federal statute. 28 U.S.C. § 1446(b); *Allen v. Ferguson*, 791 F.2d 611, 616 n.8 (7th Cir. 1986) ("In determining the validity of service prior to removal, a federal court must apply the law of the state under which the service was made.").

Indiana Trial Rule 5 says "[s]ervice is deemed complete upon mailing," Ind. Tr. R. 5(B)(2), but critically, and consistent with Rule 5(A), this language governs the service of papers after the original complaint, not service of the summons and original complaint. *See Musgrave v. Squaw Creek Coal Co.*, 964 N.E.2d 891, 897 (Ind. Ct. App. 2012), *trans. denied* ("Trial Rule 5 governs the service of subsequent pleadings and papers, such as written motions, pleadings subsequent to the original complaint, written motions, briefs, documents related to discovery, and other written notices"); *see also O'Farrell v. Guardian of Est. of George B. Drake*, 2024 Ind. App. Unpub. LEXIS 379, 24 (Ind. Ct. App. Mar. 26, 2024) (same). The court has no cause to read Rule 5's plain language any

differently, nor under sound principles of federalism should it.[1] Rule 4 controls service of the summons and original complaint under Indiana law.

The two Progress Rail entities are corporations, which for service of the summons and original complaint trigger Rule 4.6 (service "upon organizations"). Ind. Tr. R. 4.6; *Storm Damage Specialists of Am. v. Johnson*, 984 N.E.2d 660, 664 n.1 (Ind. Ct. App. 2013) ("Service of process on a corporation is controlled by Indiana Trial Rule 4.6[.]"). Service on a corporate recipient "must be made on the proper person in that manner provided by these rules for service upon individuals." Ind. Tr. R. 4.6(B). Service can be made on the corporation's agent or by registered or certified mail at the business, "with return receipt requested and returned showing receipt of the letter." Ind. Tr. R. 4.1(A). This requires more than just mailing, but receipt. A "return [] must show receipt . . . for service to be effective." *Munster v. Groce*, 829 N.E.2d 52, 59 (Ind. Ct. App. 2005) (certified mail attempts returned as undeliverable failed to perfect service); *see Nw. Nat'l Ins. v. Mapps*, 717 N.E.2d 947, 952 (Ind. Ct. App. 1999) (service not effectuated when clerk's file contained no return receipt). Neither Rule 4.1 nor Rule 4.6 contains any language like Rule 5 that deems service complete upon mailing.

Accordingly, service occurred here on January 5, 2026, not anytime sooner. A defendant's notice of removal must be filed within 30 days after receipt of the initial pleading, "through service or otherwise." 28 U.S.C. § 1446(b)(1); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,

---

[1] For support, Mr. Herbst points to an old view in *Frye v. Bowman, Henitz, Boscia & Viciam, P.C.*, 193 F. Supp.2d 1070, 1078 (S.D. Ind. 2002), but five years later Judge John Daniel Tinder revisited his view and found that *Frye* warranted reconsideration "because it was based on an incorrect interpretation of Indiana law," *Henderson v. Biel*, 2007 U.S. Dist. LEXIS 57832, 10 (S.D. Ind. Aug. 7, 2007); *see also id.* at 14. Mr. Herbst's citation to other rules also are of no help to him. Rule 5(E) concerns filing, not service, and even then cannot be read beyond the whole of Rule 5, including Rule 5(A). Nor does Rule 6(G), and the three added days for mailing, augment Rule 5 in such a way that it becomes a substitute for Rule 4.

3

526 U.S. 344, 347-48 (1999) ("An individual or entity named as defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process."). Progress Rail timely removed the case on February 4, 2026.

The question now is whether the court has subject matter jurisdiction. Under the removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). One such category is a dispute based on a federal question—a case "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In its notice of removal, Progress Rail cited federal question jurisdiction because Mr. Herbst seeks to recover benefits under an employer-sponsored health plan, which the company called an ERISA-governed employee benefit plan.

Though the "well-pleaded complaint" rule ordinarily defines whether a particular case arises under federal law, one exception is "when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 5, 8 (2003). "When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* (hyphen omitted). "[T]he ERISA civil enforcement mechanism is one of those provisions with such extraordinary preemptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (quotations and hyphen omitted). "Congress enacted ERISA to 'protect…the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee

4

benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Id.* at 208 (quoting 29 U.S.C. § 1001(b)). The statutory scheme's purpose "is to provide a uniform regulatory regime over employee benefit plans." *Id.* "To this end, ERISA includes expansive preemption provisions," which are "intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* (quotations and hyphen omitted).

As a result, any state law claim "that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is [] preempted." *Id.* at 209; *see Martin v. Petersen Health Operations*, 37 F.4th 1210, 1213 (7th Cir. 2002) ("federal law displac[ing] all possible liability under state law so that any legal claim necessarily rests on federal law" is known as "complete preemption"). "Artful pleading on the part of a plaintiff to disguise federal claims by cleverly dressing them in the clothing of state law theories will not succeed in keeping the case in state court." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 597 (7th Cir. 2008) (cleaned up).[2]

*Davila* established a two-part test for determining when ERISA completely preempts a state law claim: (1) when the individual suing for a denial of medical care coverage "is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan," and (2) "when no legal duty (state or federal) independent of ERISA or the plan terms is violated," then the suit falls within ERISA's scope. *Davila*, 542 U.S. at 210 (quoting *Metro. Life Ins. v. Taylor*, 481

---

[2] Complete preemption is perhaps "misleadingly named" because "its focus is not on preemption (a defense to a state-law claim) but on the federal occupation of a field." *Martin*, 37 F.4th at 1213. Complete preemption differs from "conflict preemption," a more typical preemption doctrine providing a defense when "it would be impossible for [the defendant] to comply with both state and federal law" or "state law (as [the plaintiff] seeks to apply it) constitutes an obstacle to fully accomplishing the objectives of Congress." *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 650 (7th Cir. 2019) (quotations omitted). Only complete preemption provides an independent basis for federal jurisdiction and removal. *Franciscan Skemp*, 538 F.3d at 601.

U.S. 58, 66 (1987)) (cleaned up); *see also* 29 U.S.C. § 1132(a)(1)(B). ERISA authorizes a civil action by a "participant or beneficiary" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Curiously, neither side grapples with this test, so the court treads lightly. Mr. Herbst argues his suit wasn't removable because his complaint didn't allege an ERISA claim; and, even if it had, ERISA provides for what he calls concurrent jurisdiction. The second argument really offers no answer. Though ERISA provides for concurrent jurisdiction by both state and federal courts, *see* 29 U.S.C. § 1132(e)(1), a "defendant seeking removal bears the burden of showing that subject matter jurisdiction exists, but that only means that the defendants must show the case is *eligible* for removal—not that state courts had no jurisdiction over the case," *Anchor Health Sys. v. Radowski*, 2016 U.S. Dist. LEXIS 53353, 3 (N.D. Ind. Apr. 21, 2016) (Miller, J.) (denying motion to remand case that included an ERISA claim); *see Cruthis v. Metro. Life Ins.*, 356 F.3d 816, 818 (7th Cir. 2004) (ERISA benefits claims may be filed in either state or federal court and are removable). That this court and a state court may have concurrent jurisdiction over any or all of Mr. Herbst's claims isn't a reason to remand.

Progress Rail fares little better, arguing that Mr. Herbst's state common law claims are preempted, but only in a conclusory manner. Progress Rail acknowledges *Davila*, even if not the test, and asserts that ERISA provides the exclusive remedy for claims seeking benefits allegedly owed under an employer-sponsored health plan. As the removing party, the company bears the burden of establishing the court's jurisdiction. *See Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012) ("the party asserting federal jurisdiction has the burden of proof to show that

6

jurisdiction is proper"); *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) ("federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court").

The negligent misrepresentation and estoppel claims are not completely preempted under either prong of *Davila*. These claims arise "not from the plan or its terms," but from Progress Rail's separate oral representations. *Franciscan Skemp*, 538 F.3d at 597. And the legal duties underlying these claims are independent of ERISA and the plan's terms. *Id.* at 598-99 (state law defines legal duties for negligent misrepresentation and estoppel claims); *see Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. Of Wis., Inc.*, 657 F.3d 496, 504 (7th Cir. 2011) (no preemption when state law contract claims required no review of the ERISA plan to resolve them).

Mr. Herbst's breach of contract claim requires more careful analysis. Recalling the fundamental difference between claims and theories, *see Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025), he offers two theories for a contract claim in truth. One pleads that Progress Rail's human resources representative, through his or her statement on behalf of the company, modified the existing benefits arrangement by extending coverage through the end of January 2024 [4 ¶ 17]. Under this theory, the contract claim would likely be completely preempted. Framed that way, Mr. Herbst alleges that the benefits arrangement—the ERISA plan—was changed, that he then became entitled to continued coverage, and that Progress Rail breached that arrangement by terminating his benefits earlier. His asserted right to relief would exist only because of the benefits arrangement as allegedly modified, and no legal duty independent of ERISA or the plan's terms would be implicated. *See Davila*, 542 U.S. at 213-14.

The second contract theory pleaded in the complaint presents differently—that the parties entered into an enforceable employment agreement. If true, that theory would not necessarily depend on any ERISA-governed plan entitlement, but instead this separate employment agreement. This distinction matters, for "a claim supported by alternative theories in the complaint may not provide the basis for federal jurisdiction unless federal law is essential to each of the theories." 13D Wright & Miller, *Federal Practice & Procedure* § 3562 (3d. ed. 2008); *see, e.g., Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809-10 (1988) (federal law must be necessary element to a well-pleaded claim). "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys.*, 80 F.3d 339, 346 (9th Cir. 1996). Here, because federal law is not a necessary element to both theories of a contract claim, the contract claim isn't completely preempted.

The defendants alternatively assert that Mr. Herbst's claims are preempted because his claims describe a "classic ERISA fiduciary-breach claim." At the start, their notice of removal never articulated such a preemption theory, only that his claims sought to recover benefits under an employer-sponsored health plan. There is a real question whether a party may add a new ground for removal outside the notice rather than just amend a defect, or even whether this constitutes such a new ground. *See* 28 U.S.C. § 1653; 14C Wright & Miller, *Federal Practice & Procedure* § 3733 (4th ed. 2018) ("In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal."); *see, e.g., Rodriguez v. LKQ Pick Your Part Midwest, LLC*, 2026 U.S. Dist. LEXIS 28292, 7-8 (N.D. Ill. Feb. 11, 2026) (collecting cases).

Even so, this alternate theory will not foreclose a remand. ERISA permits a plan participant to sue to enjoin or obtain "appropriate equitable relief" to redress violations of ERISA or plan terms, 29 U.S.C. § 1132(a)(3), which at times has been interpreted broadly to include some types of monetary compensation, say through the remedy of equitable estoppel or restitution, *see Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 877-79 (7th Cir. 2013); *Brosted v. Unum Life Ins.*, 421 F.3d 459, 465 (7th Cir. 2005). To state such a claim, a plaintiff must allege that the defendant was an ERISA fiduciary, that the defendant breached a fiduciary duty, and the breach resulted in harm. *Brosted*, 421 F.3d at 465. ERISA defines a fiduciary in functional terms—a party is a fiduciary "to the extent" it exercises discretionary authority or control over plan management, plan assets, or plan administration. 29 U.S.C. § 1002(21)(A); *see Brooks v. Pactiv Corp.*, 729 F.3d 758, 765 (7th Cir. 2013) ("A fiduciary within the meaning of ERISA must be someone acting in the capacity of manager, administrator, or financial advisor to a plan.") (cleaned up).

The alleged statement here was made to Mr. Herbst by a Progress Railroad human resources representative. But even as his employer, Progress Rail isn't automatically an ERISA fiduciary, and even an ERISA fiduciary doesn't always "wear the fiduciary hat." *Id.* at 766; *see Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("the threshold question is…whether [the defendant] was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint"). As but one example, an employer's fiduciary duties under ERISA are implicated when acting as a plan administrator, but not a plan sponsor, because "[w]hich hat the employer is proverbially wearing depends upon the nature of the function performed." *Beck v. PACE Int'l Union*, 551 U.S. 96, 101 (2007).

On this record, the defendants leave too many questions unanswered. They offer no argument past a mere label of "fiduciary-duty claim" that Progress Rail exercised discretionary authority or control over Mr. Herbst's plan, or acted as the plan's manager, administrator, or advisor, let alone with respect to the alleged statement about coverage. Without that information, the court cannot determine whether the alleged conduct could support an ERISA fiduciary breach claim at all. And the defense bears the burden of establishing federal jurisdiction. Because doubts are resolved in favor of remand, this underdeveloped argument cannot support removal. *See Travelers Prop.*, 689 F.3d at 722; *Schur*, 577 F.3d at 758. The court thus will remand the case.

The court turns to Mr. Herbst's request for attorney fees for an improvident removal. *See* 28 U.S.C. § 1447(c). The court has the discretion to award attorney fees to a party whose motion to remand is successful. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 137 (2005). "Absent unusual circumstances, the court may award attorney fees under § 1447(c) only when the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141 (cleaned up); *see Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007) ("if at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his [attorney] fees.").

An award of fees in this case isn't appropriate. First, Mr. Herbst merely cites the time his counsel spent briefing the issue, falling well short of establishing—let alone arguing—that the defendants lacked a reasonable basis for removal. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (court isn't "obliged to research and construct legal arguments for parties, especially when they are represented by counsel."). Second, the court cannot say the defendants had no objectively reasonable basis for removing the case. To be sure, their presentation of the removal

issue was at times underdeveloped, citing preemption principles in conclusory fashion without grappling with controlling standards. But § 1447(c) isn't a fee-shifting mechanism merely for unsuccessful advocacy, and the court cannot say the removal position was so clearly foreclosed as to be called objectively unreasonable. The court declines an award of fees.

CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the motion [12], REMANDS this case to the Miami Superior Court, DENIES the request for attorney fees, and DENIES the motions for oral argument [15, 20].

SO ORDERED.

May 4, 2026                                              s/ Damon R. Leichty
                                                        Judge, United States District Court